JUDGE FRANK MONTALVO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

EP22CV0017

| | |
|---|---|
| **ERIK SALAIZ,** | § |
| Plaintiff, | § |
| v. | § |
| **NATIONS AUTO PROTECTION LLC**, d/b/a **VEHICLE GUARD** a Florida Limited Liability Company, **JUSTIN SOLOMON, MATTHEW SECHTER,** and **PALMER ADMINISTRATIVE SERVICES, INC.**, a Delaware Corporation | § |
| **Defendants.** | § |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff ERIK SALAIZ ("Plaintiff") is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant NATIONS AUTO PROTECTION, LLC d/b/a VEHICLE GUARD ("NAP") is a Limited Liability Company organized and existing under the laws of Florida and can be served via registered agent Justin Solomon at 5301 N Federal Highway, Suite 295, Boca Raton, Florida 33487.

3. Defendant JUSTIN SOLOMON ("Solomon") is a natural person, resident of Florida, and Manager of NAP and can be served at 23281 Lago Mar Circle Boca Raton, Florida 33433.

1

4. Defendant MATTHEW SECHTER ("Sechter") is a natural person, resident of Florida, and Chief Executive Officer of NAP and can be served at 9436 Grand Prix Lane Boynton Beach, Florida 33472.

5. Defendant PALMER ADMINISTRATIVE SERVICES, INC. ("Palmer") is a Corporation organized and existing under the laws of Delaware with a principal address at 3430 Sunset Avenue Ocean, New Jersey 07712 and can be served via registered agent Corporation Service Company at Princeton South Corporate Center, Suite 160, 100 Charles Ewing Boulevard Ewing, New Jersey 08628.

6. Defendant NAP principals place of business is at 5301 N Federal Highway, Suite 295, Boca Raton, Florida 33487.

7. Defendant NAP, SOLOMON, SECHTER, and PALMER (together "Defendants")

## NATURE OF ACTION

8. Plaintiff brings this Complaint and Demand for Jury Trial against Defendants to stop placing illegal robo and unauthorized calls to Plaintiff's personal cell phone and to obtain redress as authorized by statute.

9. Defendants offer vehicle service contracts ("VSC") saying they are part of a "auto warranty relief program." As part of marketing their services, Defendant NAP and their agents placed illegal robocalls to Plaintiff's cell phone that used an automated telephone dialing system ("ATDS").

10. Defendant NAP makes unsolicited and unauthorized phone calls to consumers using false and misleading statements and artificial or prerecorded voice messages to sell their VSC's.

2

11. Defendants did not obtain express written consent from Plaintiff prior to calling his cell phone, and Defendants are therefore liable under the Telephone Consumer Protection Act 47 U.S.C. § 227 (the "TCPA") and its implementing regulation, 47 C.F.R. § 64.1200(a)(2).

12. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

13. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendant NAP's use of technological equipment to spam consumers on a grand scale without their consent.

14. By placing the calls at issue, Defendants have violated the statutory rights and privacy of Plaintiff and caused him to suffer damages that are recognized by statute.

15. Plaintiff therefore seeks an injunction requiring Defendants to stop calling his personal cell phone, as well as an award of actual and statutory damages, civil penalties, costs and reasonable attorneys' fees.

**JURISDICTION AND VENUE**

16. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

17. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the

3

same nucleus of operative fact, i.e., Defendants telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

18. This Court has personal jurisdiction over Defendants because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

19. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants regularly conducts business in the state of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## FACTUAL ALLEGATIONS

20. Plaintiff's personal cell phone (915) 490-0898 is on the National-Do-Not-Call-Registry.

21. Defendants offer VSC's saying they are part of an auto warranty relief program that will extend the consumers vehicle factory warranty.

22. Defendants Solomon and Sechter control and dominate NAP.

23. Defendants Solomon and Sechter approve of the contracts with the telemarketers who make illegal robocalls with artificial or prerecorded voice messages to thousands of consumers cellular and residential phone numbers using an ATDS.

24. Defendants Solomon and Sechter authorize the payments to the telemarketers.

25. Defendants Solomon and Sechter pay the telemarketers out of bank accounts they own and control.

26. Defendants Solomon and Sechter provide instruction and guidance on who to solicit and the minimum qualifications of potential clients.

27. The address listed in the policy received from Vehicle Guard is 5301 N Federal Highway, Suite 295 Boca Raton, Florida 33487 and is the same exact address listed for Nations Auto Protection, LLC listed in Florida Secretary of State records at sunbiz.org.

28. Defendant Sechter filed and signed an application for registration of fictitious name (registration# G20000159489) for NAP to do business as Vehicle Guard on December 15, 2020 listed in Florida Secretary of State records at sunbiz.org.

29. Plaintiff received four unauthorized robocalls to his personal cell phone (915) 490-0898 that all started with the same artificial or prerecorded message that stated "Hello, thank you for connecting I'm the virtual assistant for the transportation warranty authority my purpose is to inform individuals that are fifteen years old of a new financial relief program do you have a moment to hear this important announcement? Please state yes or no. As a way of financial relief, there is a new special auto warranty extension program also known as the auto warranty relief act this relief program has been state approved and will cover one hundred percent of all auto repair bills saving you thousands of dollars however enrollment into this program ends at the end of this month. So would you like to hear more about it and see how you can enroll your vehicle? Okay, in order to enroll your vehicle the vehicle must not be older than fifteen years old and not have more than one hundred and seventy five thousand miles on the odometer so do you believe you meet these minimum requirements for eligibility? Great, using our automated approval technology you are now able to obtain enrollment information based on your vehicle and current financial situation to use this AI automation and find the program you are approved for you will need to write down the website I will also deliver a text message that will provide a link with the program that benefits would you like to hear the website

5

and receive a text message? Please state yes or no. Okay, please hold a moment while I retrieve the information." It then has a 3-4 second delay before connecting to a live representative indicating the illegal robocalls were made using an ATDS.

30. On November 9, 2021 Plaintiff received one of four illegal robocalls to his personal cell phone (915) 490-0898 from a telemarketer calling on behalf of defendants from phone number (469) 591-0462.

31. Plaintiff answered and heard an artificial or prerecorded message that stated "Hello, thank you for connecting I'm the virtual assistant for the transportation warranty authority my purpose is to inform individuals that are fifteen years old of a new financial relief program do you have a moment to hear this important announcement?"

32. Plaintiff followed the prompts and then was connected to a live representative named Theresa.

33. Theresa answered and stated it was her job to make sure that Plaintiff received the message about the auto warranty relief program and collected information about the Plaintiff's vehicle.

34. Theresa then solicited Plaintiff for a VSC on behalf of defendants and then advised Plaintiff that she was going to transfer him to "pricing" so they can go over the cost of the VSC and provide him with some discounts.

35. Plaintiff was then transferred to another representative named Terrance who stated he was with the "Honda warranty division" and solicitated Plaintiff for a VSC from Vehicle Guard.

36. Terrance advised Plaintiff the cost of the VSC was $159 down payment and $128 for 30 months. Plaintiff agreed to purchase a VSC from Terrance for the sole purposes of identifying the company responsible for the unauthorized phone calls.

37. Plaintiff asked Terrance if he decided to cancel the VSC within 30 days if he would be refunded the down payment of $159 and Terrance stated he would be refunded the $159 to the credit card being used which was card ending in 4952.

38. Terrance provided Plaintiff with Vehicle Guards customer service phone number (866) 600-3434 and advised Plaintiff he can reach Terrance there if he ever had any questions or concerns. Terrance also emailed a generic contract to Plaintiff a few minutes after they spoke which contained Vehicle Guard as the seller and Palmer as the administrator for the VSC revealing the companies responsible for the illegal robocalls.

39. Plaintiff also received the hard copy of the VSC via USPS and on November 24, 2021 called the customer service phone number (866) 600-3434 to cancel the VSC.

40. Plaintiff spoke with a representative named Natalia and advised her he no longer needed the VSC. Natalia provided Plaintiff with a phone number (866) 611-1627 to the "enrollment agency" that would handle the cancelation and advised Plaintiff the VSC was with Nations Auto Protection. Natalia then transferred Plaintiff to the "enrollment agency."

41. Plaintiff was transferred to another female representative who took Plaintiff's information and advised him that he will be receiving a call back from Terrance.

42. Terrance then called Plaintiff back a few minutes later from phone number (866) 600-3434. Plaintiff advised Terrance he no longer needed the VSC. Terrance was pressuring

7

Plaintiff not to cancel and started responding back to Plaintiff in a different tone when he advised Terrance to just cancel and refund his down payment of $159.

43. Terrance advised Plaintiff he would receive an email with cancelation instructions within the hour and the down payment of $159 would be refunded.

44. Plaintiff never received an email that day and called (866) 600-3434 on November 29, 2021 to follow up with the cancelation and his refund. Plaintiff spoke with a female representative that advised him she will email cancelation instructions and he would receive his down payment of $159 as a refund.

45. Plaintiff received an email a few minutes later from nette@myvehicleguard.com with cancelation instructions. Plaintiff immediately replied back with the information requested in the email in order to process the cancelation and to receive his refund of $159.

46. On November 30, 2021 Plaintiff received an email from "Mepco Payment Plans" that said "Thank you for being a Nations Auto Protection LLC customer. Mepco is the company that will process your monthly payment for your payment plan."

47. On December 13, 2021 and after Plaintiff has tried calling (866) 600-3434 and (866) 611-1627 to get an update on his refund and calls go straight to a answering machine that state "the person at extension 112220 is unavailable." Plaintiff has also called Palmer at (800) 599-9557 and spoke to two representatives with one saying refund takes four weeks and another representative named Frank that said refund takes 6 weeks and also stated that Nations Auto Protection and Vehicle Guard are the same company and to just continue to wait for his refund.

48. Plaintiff emailed nette@myvehicleguard.com on December 8, 2021 and December 14, 2021 asking for a refund update and has had no response.

49. With information and belief defendants lie to consumers about their cancelation policy and don't refund and money owed back to consumers.

50. On three other occasions Plaintiff received three more illegal robocalls to his personal cell phone from telemarketers calling on behalf of defendants that all started with the same artificial or pre recorded message "Hello, thank you for connecting I'm the virtual assistant for the transportation warranty authority my purpose is to inform individuals that are fifteen years old of a new financial relief program do you have a moment to hear this important announcement?"

51. Table A displays the calls made by the defendants

| Date | Time | Caller ID |
|---|---|---|
| 11/9/2021 | 12:09PM | 469-591-0462 |
| 11/18/2021 | 10:20AM | 915-881-8773 |
| 11/19/2021 | 10:59AM | 502-448-4027 |
| 11/23/2021 | 11:47AM | 915-545-3272 |

52. 

53. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

54. The unauthorized phone calls made from or on behalf of Defendants to Plaintiff's personal cell phone (915) 490-0898 were made using an ATDS that has the capacity to store and produce telephone numbers using a random or sequential number generator.

55. The unauthorized phone calls made from or on behalf of Defendants to Plaintiff's personal cell phone (915) 490-0898 generally had a delay of 3-4 seconds of dead air before an audible tone connected the Plaintiff to a representative, indicating the calls were initiated using an ATDS.

9

56. Defendants do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

57. The Defendants never sent Mr. Salaiz any do-not-call policy. Plaintiff sent an internal do-not-call policy request to info@myvehicleguard.com and info@naprotection.com.

58. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Mr. Salaiz the unsolicited calls.

59. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

60. Defendants Solomon and Sechter participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

61. Defendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy. This is amply supported by the complaints Defendants receive that are available from the Better Business Bureau ("BBB"). The full scale of the complaints Defendants receive is not currently available to Plaintiff but will be revealed through discovery to amplify what is shown below.

62. Defendants refuse to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendants financially.

63. Plaintiff never consented to receive the calls alleged herein. Plaintiff had no relationship with Defendants prior to the calls alleged herein.

## VICARIOUS LIABILITY

64. Plaintiff alleges that even if Defendant Palmer claim they did not make the TCPA violating robocalls to Plaintiff directly, Defendants are liable for the TCPA violating robocalls under the following theories of liability: (1) Direct Liability, (2) Actual Authority, (3) Apparent Authority, (4) Ratifications, (5) Acting in Concert and (6) Joint Enterprise (7) Robocalls.

65. Defendant Palmer has been sued multiple times for TCPA violations and continues to do business with NAP knowing they hire third party telemarketers to make illegal robocalls to thousands of consumers en mass using an ATDS because it benefits all defendants financially when consumers purchase a VSC through NAP.

66. Defendants scheme involves the use of illegal robocalling to promote their services.

67. Defendants practice of outsourcing its robocalling to a third party company does not absolve them from direct liability under the TCPA.

68. Defendants knowing and willfully authorize third party telemarketers to robocall millions of consumers because it benefits Defendants financially when consumers purchase their VSC's.

## The Texas Business and Commerce Code 305.053

69. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

70. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing

11

damages.

## Violations of the Texas Business and Commerce Code § 302.101

71. The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

72. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

73. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

74. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

75. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

76. Plaintiff has been annoyed, harassed, and irritated by robocalls placed by the Defendants and other similar companies.

77. Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing robocalls.

## FIRST CAUSE OF ACTION

### Willful and/or Knowing Violation of 47 U.S.C. § 227
### Telephone Consumer Protection Act of 1991
### (Against all Defendants)

78. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

79. Defendants and/or their agents placed calls to Plaintiff's cellular telephone.

80. Plaintiff never consented to receive calls from Defendants. Plaintiff has no relationship with Defendants.

81. Defendants' calls were made for purposes of advertising and marketing Defendants' "auto warranty relief program" and VSC's. These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

82. The calls were made using an artificial or prerecorded voice message to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

83. As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful calling campaigns.

84. Not only did Defendants make these violating calls, Defendants and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

13

85. If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)
### (Against All Defendants)

86. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

87. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

   a. written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [1];

   b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [2]; and,

   c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[3]

88. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

89. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

---

[1] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order

## THIRD CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code 305.053

90. Plaintiff incorporates the foregoing allegations as if set forth herein.

91. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Salaiz cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

92. Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

93. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**

## FOURTH CAUSE OF ACTION
### (Violations of The Texas Business and Commerce Code 302.101)

94. Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

95. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

96. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302**.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A.  Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.  A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.  An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.  An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for four calls.

E.  An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.  An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.  An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

H.  An award to Mr. Salaiz of interest, costs and attorneys' fees, as allowed by law and equity

I.  Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

January 6, 2022                            Respectfully Submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-490-0898
<u>Salaiz.ep@gmail.com</u>